# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
                                    )
DAVID JACK BAROUCH,                 )
                                    )
            Plaintiff,              )
                                    )
    v.                              )      Civil Action No. 12-0129 (ABJ)
                                    )
U.S. DEPARTMENT OF JUSTICE, et al., )
                                    )
            Defendants.             )
                                    )
```

## MEMORANDUM OPINION

Plaintiff David Jack Barouch brings this action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 (2006), and the Privacy Act, 5 U.S.C. § 552a (2006). Plaintiff's complaint challenges the responses to written requests that he made to defendants, the Criminal Division ("CRM") of the United States Department of Justice ("DOJ"), the United States Marshals Service ("USMS"), the Executive Office for United States Attorneys ("EOUSA"), the Federal Bureau of Prisons ("BOP"), the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"), and the Department of Treasury ("Treasury").[1] In each of his requests, plaintiff sought all records related to himself. All of the defendant agencies except for Treasury responded to plaintiff's requests by conducting searches. Many have disclosed some responsive records, and all have provided reasons for withholding at least some information.

Defendants have filed two partial motions for summary judgment and dismissal, which together seek to dispose of this action in its entirety. Fed. Defs.' Partial Mot. for Summ. J. and

---

1       Plaintiff also named the Department of Justice and the Parker County Sheriff Department as defendants to this action. The Court dismissed the Parker County Sheriff Department from the action by Order of December 12, 2012 [Dkt. # 18].

Dismissal [Dkt. # 15] ("Defs.' 1st Mot."); Fed. Defs.' Supp. Mot. for Summ. J. and Dismissal [Dkt. # 22] ("Defs.' 2d Mot.").  Plaintiff opposes both motions, challenging the adequacy of the agencies' searches and their withholdings.  Resp. and Objection to Fed. Defs.' Partial Mot. for Summ. J. and Dismissal [Dkt. # 16] ("Pl.'s 1st Resp."); Pl.'s Verified Mem. Resp. to Fed. Defs.' Supplemental Mot. for Summ. J. and Dismissal [Dkt. # 25] ("Pl.'s 2d Resp.").  Plaintiff also challenges Treasury's failure to undertake a search.  The Court finds that plaintiff has failed to exhaust his administrative remedies as to some of his claims.  As to the others, the Court finds, based on affidavits and *Vaughn* indices submitted by the government, that the agencies conducted adequate searches for responsive documents, but they have not provided adequate explanations for all of their withholdings.  Accordingly, the Court will grant in part and deny in part defendants' motions for summary judgment.  The Court will direct EOUSA to disclose parts of four documents that it has withheld in full and will remand to BOP to review the documents it received from EOUSA after the commencement of this action.

## BACKGROUND

Plaintiff is currently incarcerated at the Seagoville Federal Correctional Institution in Seagoville, Texas.  Pl.'s 1st Compl. [Dkt. # 1] ("Compl.") ¶ 1.  In July 2010, he pled guilty to one count of possession of an unregistered destructive device, in violation of 26 U.S.C. §§ 5841, 5861(d), and 5871.  Minute Order, *United States v. David Barouch*, No. 4:10-CR-00099-A(01) (N.D. Tex. July 9, 2010) [Dkt. # 27].  In November 2010, he was sentenced in the United States District Court for the District of Northern Texas to 120 months in prison.  Judgment, *United State*, No. 4:10-CR-00099-A(01) (N.D. Tex. Nov. 1, 2010) [Dkt. # 41].

By letters dated April and May 2011,[2] plaintiff submitted written requests to CRM, USMS, EOUSA, BOP, and ATF. Ex. 1 to Decl. of John E. Cunningham III ("Cunningham Decl.") [Dkt. # 15-3] at 1 (CRM); Attach. 2 to Decl. of Violet Mack ("Mack Decl.") [Dkt. # 22-1] at 1 (BOP); Ex. A to Decl. of David Luczynski ("Luczynski Decl.") [Dkt. # 22-2] at 1 (EOUSA); Ex. A to Decl. of Stephanie M. Boucher ("1st Boucher Decl.") [Dkt. # 22-3] at 1 (ATF); Ex. A to Decl. of William E. Bordley ("Bordley Decl.") [Dkt. # 22-4] at 1 (USMS). All of the documents sought "full disclosure and release of all files, records, data and/or information maintained by" each agency under plaintiff's name. *Id.* His request included his birthdate, place of birth, social security number, case numbers for his conviction and appeal, and the district in which he was convicted. *Id.* In addition, plaintiff maintains that he submitted an identical FOIA request to Treasury.[3] Compl. ¶ 12; *see also* Aff. of Jack Barouch ("Barouch Aff."), Ex. A to [Dkt. # 16], ¶ 1.

## I.     Request to Treasury

Plaintiff claims that Treasury possesses but has withheld documents responsive to his request. Compl. ¶¶ 5, 22, 25. Defendants claim that Treasury never received a request from plaintiff. Mem. in Support of Fed. Defs.' Mot. for Partial Summ. J. and Dismissal [Dkt. # 15-2] ("Defs.' 1st Mem.") at 4. In support of this contention, Treasury has submitted a declaration from Hugh Gilmore, a supervisory program analyst in Disclosure Services, part of Treasury's Departmental Offices, which oversees FOIA compliance for the bureaus of Treasury except for

2     Defendants assert that plaintiff's FOIA request directed to ATF was not received until August 2011. Mem. in Support of Fed. Defs.' Supplemental Mot. for Summ. J. and Dismissal [Dkt. # 22] ("Defs.' 2d Mem.") at 4.

3     All of plaintiff's letters of request were identical, except that the letters to BOP and ATF also contained attachments, which identified with more specificity the documents that were the subjects of plaintiff's request. Ex. 2 to Mack Decl.; Ex. A to 1st Boucher Decl.

the Internal Revenue Service.  Declaration of Hugh Gilmore [Dkt. # 15-4] ("Gilmore Decl.") ¶ 2.

He states that Treasury has conducted a search of its FOIA tracking system to find any requests

submitted under plaintiff's name, but none were located.  *Id.* ¶ 5.

The declaration also notes that although plaintiff alleges that ATF is an agency within

Treasury, ATF became part of DOJ in 2003.  *Id.* ¶¶ 6–7; *see also* Homeland Security Act of

2002, Pub. L. No. 107-206, 116 Stat. 2135; Compl. ¶¶ 5, 6, 22, 25 (referring to ATF as a division

of Treasury).

## II.    Request to CRM

CRM acknowledged receipt of plaintiff's request by letter dated May 6, 2011.

Cunningham Decl. ¶ 4; *see also* Ex. 1 to Cunningham Decl.  On May 23, 2011, it responded to

the request.  Cunningham Decl. ¶ 7; Ex. 2 to Cunningham Decl.  The response directed plaintiff

to send another letter to CRM indicating which section of the agency he wanted to be searched,

and specifying the location and dates of his conviction, arrests, and the federal offenses, and any

other applicable timeframes involved.  Ex. 2 to Cunningham Decl.  By letter dated June 6, 2011,

plaintiff asked that CRM search the "FOIA/PA Unit," and he responded to CRM's other

requests.  Cunningham Decl. ¶ 8; Ex. 3 to Cunningham Decl.  On July 6, 2011, CRM sent

plaintiff a letter informing him that no responsive documents had been found.  Cunningham

Decl. ¶ 11; Ex. 5 to Cunningham Decl.  The letter also explained plaintiff's right to appeal

CRM's determination to DOJ's Office of Information Policy ("OIP").  Ex. 5 to Cunningham

Decl.  On July 12, 2011, plaintiff sent a letter to OIP appealing CRM's decision.  Cunningham

Decl. ¶ 13; Ex. 6 to Cunningham Decl.  OIP confirmed receipt of plaintiff's appeal by letter

dated July 27, 2011, and informed plaintiff by letter dated October 11, 2011 that it had

determined that CRM's search was adequate.  Cunningham Decl. ¶¶ 14–15; Exs. 7–8 to Cunningham Decl.

On April 3, 2012, after plaintiff had filed the instant lawsuit, CRM received one potentially responsive document from EOUSA because EOUSA had determined that the document originated with CRM.  Cunningham Decl. ¶ 17; Exs. 9–10 to Cunningham Decl.  The document was a July 15, 2005, memorandum ("Richter Memorandum") from Acting Assistant Attorney General of CRM, John C. Richter, concerning "[c]harging under 18 U.S.C. 924(c) where the underlying crime of violence is the possession of the same weapon."  Cunningham Decl. ¶ 19 (internal quotation marks omitted); Ex. 11 to Cunningham Decl.  On April 18, CRM informed plaintiff by letter that it was withholding the document in part pursuant to 5 U.S.C. § 552(b)(5), which permits agencies to withhold from production inter- or intra-agency documents that would not be available in litigation.  Cunningham Decl. ¶ 19; Ex. 11 to Cunningham Decl.  This letter also informed plaintiff that he could appeal the decision to OIP. Ex. 11 to Cunningham Decl.

## III.    Request to USMS

On May 17, 2011, USMS's Office of General Counsel ("OGC") received plaintiff's request.  Bordley Decl. ¶ 2; Ex. A to Bordley Decl.  By letter dated May 20, OGC acknowledged receipt of plaintiff's letter and informed him that the office had begun its search.  Bordley Decl. ¶ 3; Ex. B to Bordley Decl.  According to William E. Bordley, who is the Associate General Counsel and Freedom of Information/Privacy Act Officer for USMS, OGC searched the Prisoner Processing and Population Management/Prisoner Tracking System (PPM/PTS), JUSTICE/USM-005 and the Warrant Information Network (WIN), JUSTICE/USM-007.  Bordley Decl. ¶¶ 1, 5. These resources comprise the electronic and paper records concerning USMS prisoners and

others investigated by USMS pursuant to an arrest warrant or other judicial process. *Id.* ¶ 5. Following a search of these records, OGC identified 28 pages of material indexed to plaintiff's name, located in the Northern District of Texas – the relevant location identified by plaintiff in his request. *Id.*; Ex. A to Bordley Decl.

By letter dated June 21, 2011, OGC informed plaintiff that it was releasing twenty-eight pages of documents to him. Bordley Decl. ¶ 6; Ex. C to Bordley Decl. Of these pages, fifteen were released in their entirety, and thirteen were released with redactions pursuant to 5 U.S.C. § 552(b)(7)(C) ("Exemption (b)(7)(C)") and 5 U.S.C. § 552(b)(7)(E) ("Exemption (b)(7)(E)"). Bordley Decl. ¶ 6; *see also* 5 U.S.C. §§ 552(b)(7)(C), (b)(7)(E) (2012). The letter also informed plaintiff that he could appeal USMS's determination to OIP. Ex. C to Bordley Decl. Plaintiff filed an appeal by letter dated July 1, 2011. Bordley Decl. ¶ 7; Ex. D to Bordley Decl. By letter dated September 21, 2011, OIP informed plaintiff that it was affirming the decision. Ex. E to Bordley Decl.

USMS's *Vaughn* index describes the information withheld and lists the basis for the withholdings. Bordley Decl. ¶¶ 11–12. USMS relied on Exemption (b)(7)(C) to withhold information from twelve pages of the responsive documents. *Id.* ¶ 12. In each instance, it was invoked to excise the name, address, prison identification number, and/or registration number of third parties, government employees, law enforcement officers, USMS employees and/or other prisoners. *Id.* USMS also withheld the secure website address from one page also pursuant to Exemption (b)(7)(E). *Id.*

## IV.     Request to ATF

According to a declaration by the Chief of ATF's Disclosure Division, Stephanie M. Boucher, the agency received a letter from plaintiff on August 1, 2011, that was dated July 20,

2011. 1st Boucher Decl. ¶¶ 1, 3. The letter indicated that plaintiff had filed a formal FOIA request more than thirty days prior but had not received a response. Ex. A to 1st Boucher Decl. Enclosed along with the letter was a copy of a request written by plaintiff under FOIA and the Privacy Act, dated April 26, 2011, as well as two attachments to the request. *Id.* The first attachment is a document stating that the request includes investigative records in the possession of the Colleybille [sic], Keller, and Fort Worth Police Departments, which – according to the attachment – operated as sub-agents for ATF in plaintiff's criminal case. *Id.* The second attachment is a document stating that the request includes (1) a microcassette recording of an October 2010 interview of plaintiff by ATF Agent Riddle with plaintiff's then-counsel Mic Mickelson, (2) a tape recording of a November 2010 interview with an inmate that was conducted by ATF Agent Riddle and an unnamed Texas Ranger, and was attended by plaintiff, and (3) a videotape recording of plaintiff purchasing two salad bowls from Bed, Bath, and Beyond in roughly April or May of 2010. *Id.* By letter dated August 2, 2011, ATF responded to plaintiff to inform him that ATF had received and would process his FOIA request dated August 1, but that it had not previously received a request from him. 1st Boucher Decl. ¶ 4; Ex. B to 1st Boucher Decl.

According to the Boucher declaration, the Disclosure Division concluded that release of the records sought could reasonably be expected to interfere with ongoing law enforcement proceedings. 1st Boucher Decl. ¶ 5. Accordingly, by letter of August 3, 2011, ATF denied plaintiff's request pursuant to 5 U.S.C. § 552(b)(7)(A) ("Exemption (b)(7)(A)"). 1st Boucher Decl. ¶ 5; Ex. C to 1st Boucher Decl.; *see also* 5 U.S.C. § 552(b)(7)(A) (2012). The denial left open the option for ATF to invoke additional exemptions to support withholdings in the future. 1st Boucher Decl. ¶ 5; Ex. C to 1st Boucher Decl. The letter also informed plaintiff that he could

appeal the denial to OIP. 1st Boucher Decl. ¶ 5; Ex. C to 1st Boucher Decl. After August 3, 2011, ATF notified plaintiff of that because his appeal from his criminal case had concluded, the agency intended to release documents that had been previously withheld. Decl. of Stephanie M. Boucher [Dkt. # 26-1] ¶ 3.

According to Boucher, her staff contacted OIP after plaintiff filed the complaint in the instant case to determine whether plaintiff had filed an administrative appeal of ATF's actions. 1st Boucher Decl. ¶ 8. OIP informed Boucher's staff that it had no records of an appeal from plaintiff. *Id.*

In addition, on April 10, 2012, ATF received potentially responsive documents from EOUSA because EOUSA had determined that the documents originated with ATF. 1st Boucher Decl. ¶ 6; Ex. D to 1st Boucher Decl. By letter dated April 12, 2012, ATF notified plaintiff that it was partially withholding the documents under Exemption (b)(7)(C). 1st Boucher Decl. ¶ 7; Ex. E to 1st Boucher Decl.

## V.     Request to BOP

 By letter dated April 26, 2011, plaintiff submitted a Privacy Act/FOIA request to BOP. Mack Decl. ¶ 4; Attach. 2 to Mack Decl. The letter was directed to BOP's Office of General Counsel FOIA/PA Section and was received by that office on May 17, 2011. Mack Decl. ¶ 4; Attach. 2 to Mack Decl. According to BOP Paralegal Specialist Violate Mack, the FOIA/PA Section staff determined that the appropriate location for plaintiff's search request was BOP's South Central Region. Mack Decl. ¶ 5. Accordingly, on May 27, 2011, FOIA/PA Section staff uploaded the request letter into Metastorm BPM – the Bureau's FOIA database – for processing by the SCRO Regional Counsel's Office. *Id.* According to Mack, the now-retired SCRO Paralegal Specialist, Larry Collins, determined that the form of plaintiff's request was typical of

forms used by inmates at particular institutions, except that plaintiff had also appended an additional page specifying in more detail the materials he sought.  *Id.* ¶ 6; Attach. 2 to Mack Decl.  Those specific materials were:  "[t]elephonic recordings or transcript[s] of telephonic recordings" from (a) the Parker County detention center from May 1, 2010 through July 15, 2010; (b) FDC Fort Worth from July 1, 2010 through November 1, 2010; and (c) FCI Seagoville from October 28, 2010 to present, as well as any Parker County Detention Center or FDC Fort Worth inmate files concerning plaintiff not currently in the central file at Seagoville.  Attach. 2 to Mack Decl.

On August 14, 2011, BOP's Office of General Counsel, Freedom of Information division received another letter from plaintiff.  Mack Decl. ¶ 14.  This letter contained (1) a letter from plaintiff to the BOP FOIA section, dated July 20, 2011, requesting an update on the status of his April 26, 2011 FOIA request to the BOP Office of Central Counsel FOIA/PA Section, with a copy of the April 26 request attached, (2) a letter dated July 27, 2011, from BOP Legal Instruments Examiner Paula Champion, indicating that she had received a letter from plaintiff requesting records maintained by BOP at the Federal Correctional Institution, Fort Worth, Texas, and informing plaintiff that if his request was intended to be filed under the Privacy and Freedom of Information Acts, it should be sent to BOP's Office of General Counsel, Freedom of Information Division, and (3) a FOIA request by plaintiff, identical to the April 26, 2011 request, but addressed to the Office of General Counsel, Freedom of Information, Bureau of Prisons Central Office and dated July 30, 2011.  Mack Decl. ¶ 14; Attach. 5 to Mack Decl.

According to Mack, Collins e-mailed FCI Fort Worth's staff on June 7, 2011, requesting documents responsive to plaintiff's request.  Mack Decl. ¶ 7.  In his email, Collins noted that plaintiff had been a "holdover" inmate – that is, a BOP inmate not yet transferred to his

designated institution – at Fort Worth, and that he was specifically requesting all recorded telephone calls from Fort Worth during the specified timeframe. *Id.* & n.2. Collins also sent an e-mail on June 7, 2011 to FCI Seagoville's Legal Liaison requesting responsive records, specifically including recorded telephone calls for the requested period and any available telephone transactional data concerning plaintiff. *Id.* ¶ 8.[4]

The Mack declarations states that because the content of plaintiff's FOIA letter was the same or similar to letters that BOP receives frequently from other inmates, BOP interpreted the letter as a "form letter" rather than a request for all documents maintained in the central and medical files of the requesting inmate. *Id.* ¶ 11 & n.5. To determine the scope of plaintiff's request, BOP looked to the more specific requests delineated in the attachments to plaintiff's letter. *Id.* ¶ 11. Since the requests described in the attachments were limited to records maintained by the Parker County Detention Center and FCI Fort Worth that would not be found in plaintiff's central file maintained at FCI Seagoville, BOP determined that the scope of plaintiff's request did not extend to all documents in his central file. *Id.* And since the requests were unrelated to any records that would be maintained in plaintiff's medical file, BOP determined that the scope did not extend to all documents in his medical file. *Id.*

According to Mack, on June 8, 2011, FCI Fort Worth staff sent Collins the transactional data from plaintiff's use of the Inmate Telephone System ("ITS") but informed him that it had found no recorded telephone conversations and no detainee files. Mack Decl. ¶ 12. On June 16, 2011, FCI Seagoville staff informed Collins that it would forward a CD containing a copy of the transactional data for plaintiff's ITS usage. *Id.* ¶ 13. The CD also contained recorded telephone conversations. *Id.*

---

4      No similar request was made to the Parker County Detention Center as it is not a BOP facility. Mack Decl. ¶ 9.

On August 31, 2011, the SCRO Regional Counsel responded to plaintiff's FOIA request. Mack Decl. ¶ 15; Attach 6 to Mack Decl. The letter indicated the following:

- Parker County Detention Center records are not subject to FOIA requests and not within BOP's jurisdiction.

- BOP located no detainee file concerning plaintiff at FCI Fort Worth.

- In consideration of the specific requests noted in the attachments to plaintiff's request letter, BOP declined to interpret the scope of the request as including all documents in the central and medical files; however, plaintiff was invited to provide BOP with a clearer description of the records sought.

- BOP's search turned up 113 recorded telephone conversations from FCI Seagoville between the dates of December 18, 2010 and June 6, 2011.

- No recorded telephone conversations were found at FCI Fort Worth.

- Recorded telephone conversations are maintained on the TRUFONE system for 180 days, after which they are automatically deleted.

- Recorded telephone conversations cannot be released without consent from all recorded parties and are, therefore, exempt from disclosure under 5 U.S.C. §§ 552(b)(6) and (b)(7)(C).

- Sixteen pages of telephone transactional data were released to plaintiff.

- Plaintiff could appeal BOP's response to his request by filing a written appeal with OIP.

Mack Decl. ¶ 15; Attach. 6 to Mack Decl.

By letter dated September 29, 2011, plaintiff requested preservation of the telephone conversations identified in BOP's response. Mack Decl. ¶ 16; Attach. 7 to Mack Decl. SCRO Regional Counsel confirmed by letter dated October 24, 2011, that the records would be preserved through December 2017 per the BOP Records and Information Disposition Schedule. Mack Decl. ¶ 16; Attach. 8 to Mack Decl.

On March 13, 2012, after BOP received no correspondence indicating that plaintiff had elected to file an appeal, Collins sent an e-mail to an OIP representative, asking for a

confirmation that plaintiff had not yet appealed the decision. Mack Decl. ¶¶ 18–19. On March 27, Collins received an email response indicating that OIP had no record of an appeal. Mack Decl. ¶ 20; Attach. 9 to Mack Decl.

At the time that plaintiff filed the instant lawsuit, BOP had informed plaintiff only that it was withholding the records described in BOP's August 31, 2011 letter. *See* Attach. 6 to Mack Decl. However, after the initiation of this action, EOUSA referred a number of additional pages to BOP to process. Luczynski Decl. ¶ 6.

## VI.     Request to EOUSA

On May 17, 2011, EOUSA received a letter from plaintiff requesting, pursuant to the Privacy Act and FOIA, copies of "all files, records, data, and/or information" maintained by EOUSA under the name David Barouch.[5] Luczynski Decl. ¶ 4; Ex. A to Luczynski Decl. On May 31, 2011, EOUSA acknowledged receipt of plaintiff's letter. Luczynski Decl. ¶ 5; Ex. B to Luczynski Decl. EOUSA's letter informed plaintiff that, although the agency attempted to process most requests within twenty days, "Project Requests" – including requests about oneself in criminal case files – usually took about nine months. Ex. B to Luczynski Decl.

According to David Luczynski, an EOUSA attorney advisor who, among other things, reviews FOIA and Privacy Act requests submitted to EOUSA and prepares responses, EOUSA began its search in the Northern District of Texas, which was specified as the pertinent location in plaintiff's initial inquiry. Luczynski Decl. ¶¶ 1, 8; Ex. A to Luczynski Decl. EOUSA's search involved reviewing the records from plaintiff's case, sending email requests for responsive documents to the Assistant United States Attorney in the Criminal Division, and searching the

---

5       Although the affidavit submitted in support of EOUSA's motion to dismiss repeatedly refers to plaintiff's letter as a "FOIA request," the letter cites both FOIA and the Privacy Act as the bases for plaintiff's request. *See* Luczynski Decl. ¶¶ 3, 6, 9, 11; *see also* Ex. A to Luczynski Decl.

LIONS system – used by the United States Attorney Offices to monitor cases and retrieve files – using plaintiff's name as the search term. Luczynski Decl. ¶ 8

By letter dated March 26, 2012 – after the initiation of this case – EOUSA responded to plaintiff, indicating that it had identified relevant documents and was releasing 159 pages in full, releasing 50 pages in part, and withholding 282 pages in full. Compl. at 1; Luczynski Decl. ¶ 6; Ex. C to Luczynski Decl. The letter informed plaintiff that documents were withheld from production under the FOIA exemptions codified at 5 U.S.C. § 552(b)(3) ("Exemption (b)(3)"), 5 U.S.C. § 552(b)(5) ("Exemption (b)(5)"), 5 U.S.C. § 552(b)(6) ("Exemption (b)(6)"), and Exemption (b)(7)(C), and under the Privacy Act exemption codified at 5 U.S.C. § 552a(j)(2) ("Exemption (j)(2)"). Luczynski Decl. ¶ 6. Ex. C to Luczynski Decl.; *see also Vaughn* Index, Attach. to Luczynski Decl. The letter also informed plaintiff that additional potentially responsive documents were being referred to ATF, CRM, and BOP. Luczynski Decl. ¶ 6; Ex. C to Luczynski Decl. Finally, the letter stated that plaintiff could appeal the decision to OIP within sixty days. Luczynski Decl. ¶ 6; Ex. C to Luczynski Decl.

## VII.  Procedural Background

Plaintiff, acting *pro se*, filed the complaint in this action on January 23, 2012, against DOJ, USMS, the DOJ Criminal Division, EOUSA, BOP, Treasury, ATF, and the Parker County Sheriff Department. Compl. at 1. The complaint alleges that the named defendants have "failed, refused, and neglected to comply with Plaintiff's reasonable requests for records, documents, audio tapes and jail tape recordings, and discovery." Compl. ¶ 15. Plaintiff seeks an order compelling disclosure of his "entire record of investigation" for the years 2010 and 2011. Compl. ¶ 17. On December 12, 2012, the Court dismissed the Parker County Sheriff

Department, *sua sponte*, because the local entity is not subject to the provisions of FOIA. [*Dkt.* # 18].

Defendants filed two partial motions for summary judgment or dismissal that together would dispose of the entire case. Defs.' 1st Mot.; Defs.' 2d Mot. The first motion, filed on November 9, 2012, seeks summary judgment or dismissal with respect to plaintiff's claims against Treasury and CRM. Defs.' 1st Mot. Plaintiff filed an opposition on November 27, 2012. Pl.'s 1st Resp. Defendants filed a reply in support of their motion on December 21, 2012. Defs.' Reply to Pl.'s Resp. and Objection to Federal Defs.' Mot. for Partial Summ. J. and Dismissal [Dkt. # 20]. On January 17, 2013, plaintiff filed a surreply to defendants' response. Pl.'s Sur-Resp. to Defs.' Reply to Pl.'s Resp. and Objection to Federal Defs.' Mot. for Partial Summ. J. [Dkt. # 21] ("Pl.'s Sur-Resp."). The second motion, filed on February 7, 2013, seeks summary judgment or dismissal with respect to the claims against the remaining federal defendants: ATF, BOP, USMS, and EOUSA. Defs.' 2d Mot. Plaintiff responded on March 11, 2013. Pl.'s 2d Resp. Defendants filed a reply in support of their motion on March 22, 2013. Defs.' Reply to Pl.'s Verified Mem. Response to Fed. Defs.' Supp. Mot. for Summ. J. and Dismissal [Dkt. # 26] ("Defs.' Reply").

On July 25, 2013, upon review of the parties' submissions, the Court ordered defendants to deliver to chambers for *in camera* inspection four documents that had been withheld by defendant EOUSA. Minute Order (July 25, 2013), citing *Ray v. Turner*, 587 F.2d 1187, 1195 (D.C. Cir. 1978). EOUSA submitted the four documents to the Court *in camera* on August 2, 2013. The Court has reviewed these documents along with the parties' memoranda and pleadings.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted). To defeat summary judgment, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). The existence of a factual dispute is insufficient to preclude summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A dispute is "genuine" only if a reasonable fact-finder could find for the non-moving party; a fact is only "material" if it is capable of affecting the outcome of the litigation. *Id.* at 248; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987). In assessing a party's motion, the court must "view the facts and draw reasonable inferences 'in the light most favorable to the party opposing the summary judgment motion.'" *Scott v. Harris*, 550 U.S. 372, 378 (2007) (alterations omitted), quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam).

While the same legal framework applies in every case, where a plaintiff proceeds pro se, "the Court must take particular care to construe the plaintiff's filings liberally, for such complaints are held 'to less stringent standards than formal pleadings drafted by lawyers.'" *Cheeks v. Fort Myer Constr. Co.*, 722 F. Supp. 2d 93, 107 (D.D.C. 2010), quoting *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972).

## ANALYSIS

I.    **The Court will grant summary judgment to defendants for all claims against Treasury**

Treasury moves for summary judgment on the grounds that there is no evidence that plaintiff submitted a FOIA request to the agency.[6] Defs.' 1st Mem. at 2. Treasury's declarant, Gilmore, describes Treasury's FOIA tracking system, Gilmore Decl. ¶ 4, and he states that upon conducting a search of that tracking system under plaintiff's name, he was unable to find a request. *Id.* ¶ 5.

Plaintiff has failed to produce any evidence that he submitted a FOIA or Privacy Act request to Treasury, let alone provide a copy of the request itself to the Court. Moreover, plaintiff has continually wrongly characterized ATF as a bureau of Treasury, Compl. ¶¶ 5–6, 22, 25, which suggests that he may have been under the impression that he was seeking records from Treasury when he submitted his request to ATF. Because there is no genuine dispute that no documents were produced to plaintiff by Treasury because Treasury did not receive a FOIA request from him, Gilmore Decl. ¶¶ 4–5, the Court will grant Treasury's motion for summary judgment.

II.    **The Court will grant in part and deny in part defendants' motions for summary judgment with respect to plaintiff's claims arising under FOIA**

The purpose of FOIA is to require the release of government records upon request and to "ensure an informed citizenry, vital to the functioning of a democratic society, needed to check

---

6       Treasury also moves on these grounds under Federal Rule of Civil Procedure 12(b)(6). Defs.' 1st Mem. at 4. In his opposition to Treasury's motion, plaintiff disputes Treasury's assertion that it never received his request. Pl.'s 1st Resp. at 1. Because the Court relies on evidence outside the complaint to resolve this dispute, the Court will decide the claim under Rule 56, not 12(b)(6). *See* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) . . . , matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56.").

against corruption and to hold the governors accountable to the governed." *Nat'l Labor Relations Bd. v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978). At the same time, Congress recognized "that legitimate governmental and private interests could be harmed by release of certain types of information and provided nine specific exemptions under which disclosure could be refused." *FBI v. Abramson*, 456 U.S. 615, 621 (1982); *see also Ctr. for Nat'l Sec. Studies v. DOJ*, 331 F.3d 918, 925 (D.C. Cir. 2003) ("FOIA represents a balance struck by Congress between the public's right to know and the government's legitimate interest in keeping certain information confidential."). The Supreme Court has instructed that "FOIA exemptions are to be narrowly construed." *Abramson*, 456 U.S. at 630.

To prevail at the summary judgment phase in a typical FOIA action, an agency must satisfy two elements. *Leadership Conference on Civil Rights v. Gonzales*, 404 F. Supp. 2d 246, 252 (D.D.C. 2005). First, the agency must demonstrate that it has made "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990). Second, an agency must show that "materials that are withheld . . . fall within a FOIA statutory exemption." *Leadership Conference on Rights*, 404 F. Supp. 2d at 252. After asserting and explaining its exemptions, an agency must release "[a]ny reasonably segregable portion of a record" and provide it to the requesting party, "after deletion of the portions which are exempt." 5 U.S.C. § 552(b)(9).

The district court reviews the agency's action *de novo*, and "the burden is on the agency to sustain its action." 5 U.S.C. § 552(a)(4)(B); *accord Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981). Once the case comes to court, "FOIA cases are typically and appropriately decided on motions for summary judgment." *Moore v. Bush*, 601 F. Supp. 2d 6, 12

(D.D.C. 2009). In any motion for summary judgment, the Court "must view the evidence in the light most favorable to the nonmoving party, draw all reasonable inferences in his favor, and eschew making credibility determinations or weighing the evidence." *Montgomery v. Chao*, 546 F.3d 703, 706 (D.C. Cir. 2008); *see also Anderson*, 477 U.S. at 255 (1986). However, where a plaintiff has not provided evidence that an agency acted in bad faith, "a court may award summary judgment solely on the basis of information provided by the agency in declarations." *Moore*, 601 F. Supp. 2d at 12.

## A. <u>Exhaustion of Administrative Remedies</u>

Once a FOIA request has been processed, a plaintiff is required to exhaust all administrative remedies before bringing an action to compel disclosure of documents. *See* 5 U.S.C. § 552(a)(6); 28 C.F.R. § 16.9(c); *Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004). Failure to exhaust such remedies bars the lawsuit. *See Banks v. DOJ*, 813 F. Supp. 2d 132, 138–39 (D.D.C. 2011) (granting agency's motion for summary judgment in FOIA action where plaintiff failed to file an administrative appeal before filing the lawsuit); *Schwaner v. Dep't of Army*, 696 F. Supp. 2d 77, 81 (D.D.C. 2010) (same).

However, because exhaustion is not a jurisdictional bar under FOIA, courts will deem a plaintiff to have constructively exhausted his administrative remedies with respect to a FOIA claim when an agency "fails to comply with the applicable time limit provisions" of FOIA. 5 U.S.C. § 552(a)(6)(C)(i). The agency has twenty days to make an initial determination, and following an administrative appeal of a FOIA decision, twenty days to make a determination on the appeal. 5 U.S.C. § 552(a)(6)(A)(i)–(ii). A requester will be found to have "constructively exhausted" his administrative remedies if, after the twenty days has expired but before the agency responds to his request, he files an action in federal court complaining that the agency

failed to respond to his FOIA request within the applicable time limit.  *See* 5 U.S.C. § 552(a)(6)(C)(i) (2012); 28 C.F.R. § 16.9(a), (c) (2012); *see also Oglesby*, 920 F.2d at 70–71. Constructive exhaustion is applied narrowly:  courts in this district have declined to find that a requestor has constructively exhausted his administrative remedies if the agency responds to his request before he brings suit, even if the agency's response is outside the statutory time limit. *See, e.g., Judicial Watch, Inc. v. U.S. Dept. of Energy*, 888 F. Supp. 2d 189, 192–193 (D.D.C. 2012).

### 1.    *EOUSA*

At the time plaintiff filed the complaint in this action, EOUSA had not responded to his request for documents, despite the expiration of the mandatory statutory time limit for agency response under FOIA.  Defs.' 2d Mem. at 17 n.8.  EOUSA concedes that plaintiff's "administrative remedies were constructively exhausted by the time he filed this lawsuit."  *Id.* Accordingly, the Court finds that plaintiff exhausted his administrative remedies with respect to his claims against EOUSA under FOIA.

### 2.    *ATF*

But the ATF has moved to dismiss the FOIA claims against it under Federal Rule of Civil Procedure 12(b)(6) on the basis that plaintiff failed to exhaust his administrative remedies.[7] Defs.' 2d Mem. at 4–5.  ATF issued two different decisions in response to plaintiff's request:  (1) it denied his August 3, 2011 request because it did not find any responsive documents; and (2) it later disclosed redacted versions of documents that EOUSA had referred to it after the inception

---

[7]    To this end, ATF relies on an affidavit attesting to the fact that plaintiff could have appealed.  Defs.' 2d Mem. at 4–5; 1st Boucher Decl. ¶¶ 7–8.  Although ATF styles its motion as a Rule 12(b)(6) motion, its reliance on the affidavit requires this Court to treat the motion as a Rule 56 motion.  Fed. R. Civ. P. 12(d). *See Hamilton v. Geithner*, 743 F. Supp. 2d 1, 8 (D.D.C. 2010); *Lane v. Tschetter*, Civ. A. No. 05-1414(EGS), 2007 WL 2007493, at *2 (D.D.C. July 10, 2007).

of this action. 1st Boucher Decl ¶¶ 5, 7. ATF claims that plaintiff has failed to exhaust the available administrative remedies under FOIA without distinguishing between these two different determinations. Defs.' 2d Mem. at 4–5. Because plaintiff has not appealed either of these decisions to OIP, ATF maintains, judicial review of its decisions is unavailable. Defs.' 2d Mem. at 5. For his part, plaintiff maintains that "it would be futile to undergo the deliberative and fruitless delay of further administrative review." Pl.'s 2d Resp. at 36. The Court will address each of ATF's decisions separately.

a. Plaintiff's claim with respect to ATF's August 3, 2011 decision is barred

With respect to the first set of documents, the Court agrees with ATF that plaintiff's claim under FOIA is barred for failure to exhaust his administrative remedies. When plaintiff received notification – in the letter dated August 3, 2011 – that his initial request to ATF had been denied, he was notified that he could appeal the decision to OIP. Ex. C to 1st Boucher Decl. Plaintiff did not do so. 1st Boucher Decl. ¶ 8.

Plaintiff is correct that in certain contexts, "the exhaustion requirement may be waived by the agency, or disregarded by the court when application of the doctrine would be futile." *Cutler v. Hayes*, 818 F.2d 879, 891 (D.C. Cir. 1987). "[S]till, as a jurisprudential doctrine, failure to exhaust precludes judicial review if the purposes of exhaustion and the particular administrative scheme support such a bar." *Wilbur v. CIA*, 355 F.3d 675, 677 (D.C. Cir. 2004) (internal quotation marks omitted), quoting *Hidalgo v. FBI*, 344 F.3d 1256, 1258–59 (D.C. Cir. 2003). And "the FOIA's administrative scheme favors treating failure to exhaust as a bar to judicial review." *Hidalgo*, 344 F.3d at 1259. Moreover, permitting plaintiff to obtain judicial review without exhausting his administrative remedies in this case would undermine the purpose for the exhaustion requirement: "preventing premature interference with agency processes, affording

the parties and the courts the benefit of the agency's experience and expertise, or compiling a record which is adequate for judicial review." *Id.* (alterations and internal quotation marks omitted), quoting *Ryan v. Bentsen*, 12 F.3d 245, 247 (D.C. Cir. 1993).

Therefore, with respect to ATF's August 3, 2011 determination, defendants' motion to dismiss, construed as a motion for summary judgment, will be granted.

b. <u>Plaintiff's failure to file an administrative appeal of ATF's determination under FOIA with respect to the documents referred to it by the EOUSA does not bar this Court's review of the merits of the determination</u>

The Court, however, finds a distinction between the challenges to ATF's determination regarding the documents that ATF uncovered in its initial search and the determination on the documents referred to ATF by EOUSA after the initiation of this action. Plaintiff was first informed of his right to appeal ATF's decision regarding the documents referred to it by EOUSA by letter dated April 12, 2012, after plaintiff had already filed his complaint in this Court. Ex. E to 1st Boucher Decl. In other words, when plaintiff filed the instant lawsuit, there was no administrative remedy available for plaintiff to exhaust regarding these documents. *See* Luczynski Decl. ¶ 6 (showing EOUSA referred documents to ATF after plaintiff filed suit).

It is true that plaintiff did not exhaust his administrative remedies with respect to these documents in a literal sense. But a FOIA requester will be deemed to have "constructively exhausted" his administrative remedies "if the agency fails to comply with the applicable time limit provisions." 5 U.S.C. § 552(a)(6)(C)(i). The documents processed by ATF were actually in the possession of EOUSA, which had not responded to plaintiff's request when plaintiff filed his complaint in this action, despite the expiration of the applicable time limit for the agency to respond. *See, e.g., Oglesby*, 920 F.2d at 65–66. EOUSA concedes this. Defs.' 2d Mem. at 17 n.8. It would be anomalous to review plaintiff's challenges to EOUSA's withholdings of

documents that were identified by EOUSA in the spring of 2012 and that were processed by EOUSA, but to decline review on exhaustion grounds the determinations of other agencies to which EOUSA sent some of the documents it identified at the same time. *Compare* Defs.' 2d Mem. at 17 n.8 (conceding administrative remedies were constructively exhausted) *with* 1st Boucher Decl. ¶ 8 (asserting that plaintiff has failed to exhaust his administrative remedies with respect to his ATF request). Since the exhaustion requirement under FOIA is not jurisdictional, *Hidalgo*, 344 F.3d at 1258, the Court finds that plaintiff has constructively exhausted his administrative remedies with respect to the documents uncovered by EOUSA after the initiation of this action, regardless of whether they were processed by EOUSA or by another agency, such as ATF. Accordingly, the Court finds that plaintiff's challenge to ATF's determination on the documents it received from EOUSA is not barred for failure to exhaust administrative remedies.

3. *BOP*

a. The Court is barred from reviewing plaintiff's challenge to BOP's August 31, 2011 determination because plaintiff failed to exhaust his administrative remedies with respect to that determination

BOP argues that plaintiff is barred from seeking judicial review of BOP's response to his FOIA request because he failed to exhaust all administrative remedies before filing the instant suit. Defs.' 2d Mem. at 9. Plaintiff argues that any further administrative review would be "futile." Pl.'s 2d Resp. at 36.

With respect at least to the documents that were the subject of BOP's August 31, 2011 letter, plaintiff's request differs little in relevant respects from his request to ATF: Plaintiff was informed on August 31, 2011, that certain documents were being released to plaintiff, that others were being withheld, and that he was entitled to an administrative appeal. Mack Decl. ¶ 15; Attach. 6 to Mack Decl. In addition, the letter informed plaintiff that he might obtain additional

documents by specifying that he also sought the records located in his central and medical files. Mack Decl. ¶ 15; Attach. 6 to Mack Decl.  Plaintiff responded to BOP on September 29, 2011, but he did not file an administrative appeal with OIP.  Mack Decl. ¶¶ 16, 20; Attach. 7 to Mack Decl.; Attach. 9 to Mack Decl.  Plaintiff's conclusory characterization of further administrative review as "futile" is insufficient to overcome the rule that exhaustion of administrative remedies is a prerequisite to judicial review in this context for the same reasons that the Court discussed with respect to ATF.  Accordingly, the Court is barred from reviewing plaintiff's challenge to BOP's August 31, 2011 determination.

b. <u>BOP must identify which documents were referred to it by EOUSA and produce them or explain its basis for withholding them</u>

Defendants argue that that plaintiff's challenge to BOP's withholding of the documents referred to it by EOUSA after the initiation of this action is also barred because he failed to exhaust his administrative remedies.  Defs.' 2d Mem. at 17 n.7.  The Court finds for the same reasons discussed above with respect to ATF that plaintiff has constructively exhausted his administrative remedies, and the Court may therefore address the merits of his claim.

Moreover, BOP has yet to produce to plaintiff the documents referred to it by EOUSA or to explain the basis for its withholdings.  *See generally* Mack Decl. (making no reference to documents referred to it by EOUSA).  Consequently, plaintiff has not received any determination on the referred documents, despite the fact that he had constructively exhausted his administrative remedies.  *See Oglesby*, 920 F.2d at 70–71.  Accordingly, the Court will remand to BOP with the direction that it either produce the documents referred to it by EOUSA to plaintiff or justify any withholdings.  The FOIA claims that remain, then, are against CRM, USMS, EOUSA, and ATF for its handling of records transmitted to it by EOUSA.

## B.     The agencies' searches were adequate

In pursuing those claims, plaintiff challenges the adequacy of the agencies' searches.[8] Compl. ¶ 15; Pl.'s 1st Resp. at 3; Pl.'s 2d Resp. at 8–13.  The Court finds that each of these agencies' searches was adequate.

To prevail in a FOIA case, the agency must demonstrate that it has made "a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  *Ogelsby*, 920 F.2d at 68.  "[A]t the summary judgment phase, an agency must set forth sufficient information in its affidavits for a court to determine if the search was adequate."  *Nation Magazine, Wash. Bureau v. U.S. Customs Serv.*, 71 F.3d 885, 890 (D.C. Cir. 1995), citing *Oglesby*, 920 F.2d at 68.  Such agency affidavits attesting to a reasonable search "are afforded a presumption of good faith[,]" *Defenders of Wildlife v. U.S. Dep't of Interior*, 314 F. Supp. 2d 1, 8 (D.D.C. 2004), and "can be rebutted only 'with evidence that the agency's search was not made in good faith.'"  *Id.*, quoting *Trans Union LLC v. Fed. Trade Comm'n*, 141 F. Supp. 2d 62, 69 (D.D.C. 2001).

### 1.     *CRM*

CRM maintains that it conducted an adequate search for records responsive to plaintiff's request that was reasonably calculated to uncover all relevant documents.  Defs.' Reply at 4.

---

8     Defendants argue that plaintiff waived any challenge to CRM's search by not raising the issue in his opposition to first dispositive motion. Defs.' Reply at 5.  As discussed, where, as here, a plaintiff appears *pro se*, "the Court must take particular care to construe the plaintiff's filings liberally, for such complaints are held 'to less stringent standards than formal pleadings drafted by lawyers.'" *Cheeks*, 722 F. Supp. 2d at 107, quoting *Haines*, 404 U.S. at 520–21.  The Court will construe plaintiff's assertion in his opposition to the original dispositive motion that to date, "defendants continue to hide, suppress, and otherwise *fail to identify*" responsive records as an objection to the adequacy of defendants' search.  Pl.'s 1st Resp. at 3 (emphasis added).

Plaintiff disputes this assertion, in part contending that defendants' failure to locate the three missing audiotapes demonstrates the inadequacy of the search. Pl.'s 2d Resp. at 10–11.

To show that CRM performed adequate searches for responsive records, defendants submitted a declaration by John Cunningham III – a Trial Attorney in the CRM currently assigned to the FOIA and Privacy Act Unit. Cunningham Decl. ¶ 1. The Cunningham declaration states that, as a general practice, CRM searches its Central Criminal Division Index File ("CRM-001") in response to FOIA requests. *Id.* ¶ 9. The declaration further states that CRM searched CRM-001 as well as the CRM oracle menu – the Case Automated Tracking System ("CATS"). *Id.* ¶ 10. CRM used plaintiff's name as a search term. Ex. 4 to Cunningham Decl. In addition, since plaintiff had indicated in his submission of materials to CRM that the section of CRM that he reasonably believed might contain responsive records was the FOIA and Privacy Act Unit of the Office of Enforcement Operations, CRM specifically searched that unit's records. Cunningham Decl. ¶ 9; Ex. 3 to Cunningham Decl. The Cunningham declaration also indicates that it is common for CRM to find no records responsive to a federal inmate's Privacy Act request because most federal criminal cases are prosecuted by EOUSA. Cunningham Decl. ¶ 12. This affidavit therefore establishes that CRM searched the databases that were likely to turn up documents responsive to plaintiff's requests using search terms that correspond to the scope of the requests.

Plaintiff specifically challenges CRM's search on the basis that after informing him that it had found no responsive documents, it later "admitted" the existence of one document that had originated with CRM. Pl.'s Sur-Resp. to Def.'s 1st Mot. at 1. Plaintiff appears to be referring to the document that EOUSA referred to CRM after the inception of this action. The fact that EOUSA referred a document to CRM that it determined "may or may not be responsive" to

plaintiff's request does not make CRM's search inadequate. *See* Ex. 9 to Cunningham Decl. First, it was EOUSA that uncovered the document in its files, not CRM. But even if CRM had uncovered additional documents after its initial search, "the mere fact that additional documents have been discovered does not impugn the accuracy of the [agency] affidavits. The issue [is] not whether any further documents might conceivably exist but whether [the agency]'s search for responsive documents was adequate." *Goland v. CIA*, 607 F.2d 339, 369 (D.C. Cir.1978).

The Court therefore finds, on the basis of the Cunningham declaration, that CRM's search was "reasonably calculated to uncover all relevant documents." *Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).[9]

2. *USMS*

The Court similarly finds that USMS conducted an adequate search. Defendants have submitted a declaration by USMS Associate General Counsel and Freedom of Information/Privacy Act Officer Bordley. Bordley Decl. ¶ 1. The Bordley declaration states that OGC searched the systems of records routinely searched for documents concerning prisoners for documents relating to plaintiff. *Id.* ¶¶ 4–5. OGC used plaintiff's name as well as other personal identifying information to identify documents indexed to him. *Id.* ¶ 4. The other personal identifiers submitted to OGC included plaintiff's date of birth, place of birth, social security number and information concerning his criminal case. Ex. A to Bordley Decl. USMS conducts searches using the requestor's name and/or other identifying information, often his prisoner

---

9    In opposing the motion, plaintiff argues that summary judgment is ill advised prior to the tendering of a *Vaughn* index and the Court's in camera inspection of the documents and records, particularly three audio cassette tapes plaintiff alleges exist. Pl.'s 1st Resp. ¶ 9. Since plaintiff asserts the same arguments in a subsequent filing with respect to the defendants generally, *see* Pl.'s 2d Resp. at 27–30, the Court will address these arguments altogether at the end of this Memorandum Opinion.

registration number or social security number. Bordley Decl. ¶ 5. In addition, plaintiff identified the Northern District of Texas as the location to be searched, and OGC confirmed that this was the location where USMS would reasonably expect to find responsive documents. Bordley Decl. ¶ 4; Ex. A to Bordley Decl. USMS's search located twenty-eight pages of responsive documents, and USMS produced those pages to plaintiff with some limited redactions. Bordley Decl. ¶ 6. In light of these facts, this Court finds, on the basis of Bordley's affidavit, that the search was "reasonably calculated to uncover all relevant documents." *Weisberg*, 705 F.2d at 1351.

3.  *EOUSA*

Finally, the Court also finds that EOUSA conducted an adequate search. The Luczynski declaration states that, upon receiving plaintiff's request, EOUSA requested that the United States Attorney's Office for the Northern District of Texas search and forward responsive documents. Luczynski Decl. ¶ 8. The FOIA contact for the Northern District of Texas searched for records from the case files of plaintiff's criminal case, and sent e-mails to the Assistant United States Attorneys in the Criminal Division to ascertain whether they had any responsive records. *Id.* To search for files, the FOIA contact used the "LIONS" system, which is a computer system used by United States Attorneys' Offices to access databases which can be used to retrieve files pertaining to cases and investigations based on a defendant's name, the internal administrative number for the case, and the district court case number. *Id.* The FOIA contact used plaintiff's name as the search term. *Id.* According to the declarant, "[a]ll responsive documents to Plaintiff's FOIA request would have been located in the [United States Attorney's Office for the Northern District of Texas]. There are no other records systems or locations within EOUSA or DOJ in which other files pertaining to Plaintiff's name were maintained." *Id.*

These affidavits establish that the agencies searched the databases that were likely to turn up documents responsive to plaintiff's requests using search terms that correspond to the scope of the requests. Plaintiff has not presented any evidence of bad faith on the part of the government. The Court therefore finds, on the basis of defendants' affidavits, that the searches were "reasonably calculated to uncover all relevant documents." *Weisberg*, 705 F.2d at 1351.

Plaintiff argues that the searches performed by the DOJ subsections and by EOUSA were inadequate because they failed to turn up three responsive audio tapes that are in the agencies' possession. Pl.'s 2d Resp. at 11. But, "the mere fact that additional documents have been discovered does not impugn the accuracy of the [agency] affidavits. The issue [is] not whether any further documents might conceivably exist but whether [the agency's] search for responsive documents was adequate." *Goland v. Cent. Intelligence Agency*, 607 F.2d 339, 369 (D.C. Cir.1978); *see also Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) ("[T]he issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*."); *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003) ("[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search."); *Adionser v. DOJ*, 811 F. Supp. 2d 284, 293 (D.D.C. 2011) (rejecting a plaintiff's challenge to the adequacy of a search because he challenged it "based on the *results* of the search rather than the actual *method* by which" the search was conducted).

Plaintiff does not identify any problems with the way in which the search was conducted, but rather challenges the results of the search. As the Court has already explained, the agencies have met their burden of demonstrating that the methods they used to search for responsive documents can be reasonably expected to produce the information plaintiff requested.

And although plaintiff lodges a series of conclusory allegations that the agencies acted in bad faith, he does not proffer any evidence of bad faith. The Court therefore finds, on the basis of the government's declarations, that the agencies' searches were "reasonably calculated to uncover all relevant documents." *Weisberg v. Dep't. of Justice*, 705 F.2d 1344, 1351 (D.C. Cir. 1983).

## C.    The agencies have met their burden to show that they released reasonably segregable portions of responsive records with the exception of four documents withheld by EOUSA

FOIA expressly requires agencies to extract "[a]ny reasonably segregable portion of a record" and provide it to the requesting party "after deletion of the portions which are exempt." 5 U.S.C. § 552(b). "[I]t has long been the rule in this Circuit that non-exempt portions of a document must be disclosed *unless* they are inextricably intertwined with exempt portions." *Wilderness Soc'y v. U.S. Dep't of Interior*, 344 F. Supp. 2d 1, 18 (D.D.C. 2004) (emphasis in original), quoting *Mead Data Cent., Inc. v. U.S. Dep't of Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977). Agencies and courts must "differentiate among the contents of a document rather than to treat it as an indivisible record for FOIA purposes." *Abramson*, 456 U.S. at 626 (internal quotation marks omitted). Regardless of whether a party actually challenges an agency's determination on the segregability of requested records, a district court must not "simply approve the withholding of an entire document without entering a finding on segregability, or the lack thereof." *Schiller v. Nat'l Labor Relations Bd.*, 964 F.2d 1205, 1210 (D.C. Cir. 1992), *abrogated on other grounds by Milner v. Dep't of Navy*, 131 S. Ct. 1259 (2011) (internal quotation marks omitted); *see also Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007) ("If the district court approves withholding without such a finding [of segregability], remand is required even if the requester did not raise the issue of segregability before the court."). The district court's findings of segregability must be "specific." *Sussman*, 494 F.3d at 1116.

The government bears the burden of demonstrating that no reasonably segregable material exists in the withheld documents. *Army Times Publ'g Co. v. Dep't of Air Force*, 998 F.2d 1067, 1068 (D.C. Cir. 1993). The agency must "provide[] a detailed justification and not just conclusory statements to demonstrate that all reasonably segregable information has been released." *Valfells v. CIA*, 717 F. Supp. 2d 110, 120 (D.D.C. 2010) (internal quotation marks omitted); *see also Armstrong v. Exec. Office of the President*, 97 F.3d 575, 578 (D.C. Cir. 1996) (affirming summary judgment where government affidavits explained non-segregability of documents with "reasonable specificity"). The government may meet its obligation of "reasonable specificity" with "[t]he combination of the *Vaughn* index and [agency] affidavits." *Johnson v. Exec. Office for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002); *see also Loving v. Dep't of Def.*, 550 F.3d 32, 41 (D.C. Cir. 2008). Whether the *Vaughn* index is sufficient "turns on whether the agency has sufficiently explained why there was no reasonable means of segregating factual material from the claimed privileged material." *Wilderness Soc'y*, 344 F. Supp. 2d at 18. "[A] blanket declaration that all facts are so intertwined" is not sufficient to meet this burden. *Id.* at 19.

With the exception that is explained later in this opinion in the context of plaintiff's request to EOUSA, the Court finds that defendants have met their burden of showing with reasonable specificity that they disclosed all segregable material. The grounds for this conclusion are explained along with the Court's substantive discussion of the propriety of the government's withholdings.

### D. __FOIA Exemptions__

    1.    *CRM did not err in withholding the Richter Memorandum pursuant to Exemption (b)(5)*

CRM argues that summary judgment is appropriate because the only document responsive to plaintiff's request that has been withheld is the Richter Memorandum, which it contends was appropriately withheld subject to Exemption (b)(5).[10]  Defs.' 1st Mem. at 9–13. Plaintiff has generally challenged defendants' invocation of Exemption (b)(5).  *See* Pl.'s 2d Resp. at 19–20.

FOIA Exemption (b)(5) allows agencies to withhold records if the requested documents include "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency[.]" 5 U.S.C. § 552(b)(5).  In determining whether a document was properly withheld under Exemption (b)(5), a court must ensure that the document satisfies two conditions:  (1) "its source must be a Government agency, and [(2)] it must fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it."  *Dep't of Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 8 (2001).  These privileges include the attorney work product and deliberative process privileges, which are the two privileges that CRM contends protect the Richter Memorandum.  *Id.*; Defs.' 1st Mem. at 11–12.  Since the Court finds that CRM has satisfied the work product prong, it will not address the deliberative process prong.

---

10    CRM also notes that it redacted the name and telephone number of the EOUSA employee who referred the Richter Memorandum to CRM pursuant to Exemptions (b)(6) and (b)(7)(C). Cunningham Decl. ¶ 17 n.2.  Because plaintiff did not request – and has not disputed the decision to withhold – this information, the only relevant exemption that the Court will address is Exemption (b)(5).  Moreover, even if the Court were to consider CRM's reliance on Exemptions (b)(6) and (b)(7)(C), it would find that the agency's withholdings were proper for the same reasons it finds USMS's and EOUSA's reliance on Exemption (b)(7)(C) was proper.

The work product doctrine protects "'mental processes of the attorney,'" *Klamath*, 532 U.S. at 8, quoting *United States v. Nobles*, 422 U.S. 225, 238 (1975), when such material was "prepared in anticipation of litigation or for trial . . . ." *Judicial Watch, Inc. v. DOJ*, 432 F.3d 366, 369 (D.C. Cir. 2005), quoting Fed. R. Civ. P. 26(b)(3) (internal quotation marks omitted). It extends to material which "can fairly be said to have been prepared or obtained because of the prospect of litigation." *Equal Emp't Opportunity Comm'n v. Lutheran Soc. Servs.*, 186 F.3d 959, 968 (D.C. Cir.1999) (internal quotation marks omitted). The doctrine also includes materials relating to "foreseeable litigation, even if no specific claim is contemplated." *Schiller*, 964 F.2d at 1208, *abrogated on other grounds by Milner*, 131 S.Ct. 1259. The "'testing question'" when reviewing a withholding under the work-product prong of Exemption (b)(5) is "'whether, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation.'" *In re Sealed Case*, 146 F.3d 881, 884 (D.C. Cir. 1998), quoting *Senate of Puerto Rico v. DOJ*, 823 F.2d 574, 586 n.42 (D.C. Cir. 1987).

CRM maintains that, as a document created by the executive branch and that never left the executive branch, the Richter Memorandum meets Exemption (b)(5)'s threshold requirement that its source must be a government agency. Defs.' 1st Mem. at 12. Because plaintiff does not dispute this assertion, and because there is no evidence that the government's assertion is false, *Klamath*'s first prong is not at issue here. *See* 532 U.S. at 8.

CRM also contends that the document is predecisional and deliberative, and was prepared in anticipation of litigation, because it relates to "[c]harging under 18 U.S.C. 924(c) where the underlying crime of violence is the possession of the same weapon." Cunningham Decl. ¶ 19; *see also* Ex. 11 to Cunningham Decl. Although plaintiff does not specifically dispute this

assertion in his opposition to defendant's summary judgment motion relating to the CRM request, he contends generally that Exemption (b)(5) does not protect factual material. Pl.'s 2d Resp. at 19–20. But this argument is unavailing with respect to the work product doctrine.[11] "The work-product privilege simply does not distinguish between factual and deliberative material." *Martin v. Office of Special Counsel Merit Sys. Prot. Bd.*, 819 F.2d 1181, 1187 (D.C. Cir. 1987); *see also Judicial Watch*, 432 F.3d at 371, quoting *Martin* for the proposition that the work-product doctrine does not "distinguish between factual and deliberative material."); *Comptel v. FCC*, 910 F. Supp. 2d 100, 122 (D.D.C. 2012) ("If a document is fully protected as work product, then segregability is not required because that privilege does not distinguish between factual and deliberative materials.") (internal quotation marks omitted); *Tax Analysts v. IRS*, 117 F.3d 607, 620 (D.D.C. 1997) ("The work product doctrine protects such deliberative materials but it also protects factual materials prepared in anticipation of litigation."). Here, the government has provided sufficient evidence that the Richter Memorandum is predecisional material prepared in anticipation of plaintiff's criminal trial. Since plaintiff has not presented evidence that controverts the government's declaration or presented evidence of bad faith, the Court finds that the document was properly withheld under the work-product prong of FOIA Exemption (b)(5). *See Defenders of Wildlife*, 314 F. Supp. 2d at 8.

"If a document is fully protected as work product, then segregability is not required." *Judicial Watch*, 432 F.3d at 371. Because the Richter Memorandum – the only document withheld by CRM – was properly withheld in its entirety as attorney work product, the Court finds that CRM has met its segregability obligations.

---

11    The Court also notes that a memorandum related to a charging decision may contain some facts, but is not solely factual.

2.    *USMS*

USMS has withheld records under Exemptions (b)(7)(E) and (b)(7)(C).  The Court will

uphold its reliance on these exemptions.

a.    <u>USMS appropriately redacted a record pursuant to FOIA Exemption (b)(7)(E)</u>

FOIA Exemption 7(E) protects from disclosure law enforcement records "to the extent

that the production of such . . . information . . . would disclose techniques and procedures for law

enforcement investigations or prosecutions, or would disclose guidelines for law enforcement

investigations or prosecutions if such disclosure could reasonably be expected to risk

circumvention of the law."  5 U.S.C. § 552(b)(7)(E) (2012).  "Exemption 7(E) sets a relatively

low bar for the agency to justify withholding:  Rather than requiring a highly specific burden of

showing how the law will be circumvented, exemption 7(E) only requires that the [agency]

demonstrate logically how the release of the requested information might create a risk of

circumvention of the law.'"  *Blackwell v. FBI*, 646 F.3d 37, 42 (D.C. Cir. 2011) (alteration in

original) (internal quotation marks omitted).

USMS invoked Exemption (b)(7)(E) to withhold the secure website address of an internal

USMS database.  Bordley Decl. ¶ 11.  The document was otherwise produced in full.  *Id.* ¶¶ 11–

12.  The Bordley declaration asserts that if the address were to be released, it could lead to the

circumvention of the law by allowing individuals to access a database used to process prisoners.

*Id.* ¶ 11.  Plaintiff does not dispute Bordley's assertion.  Accordingly, the Court finds that USMS

has properly justified its withholding under FOIA.  *See generally* Pl.'s 2d Resp.; *see also* Defs.'

Reply at 11.  Moreover, based on the narrow scope of this redaction under on Exemption

(b)(7)(E), and the fact that USMS released the rest of the redacted document to plaintiff, Bordley

Decl. ¶ 11, the Court finds that USMS has met its obligation to disclose reasonably segregable information.

      b.  <u>USMS appropriately withheld portions of certain documents pursuant to Exemption (b)(7)(C)</u>

FOIA Exemption (b)(7)(C) exempts documents compiled for law enforcement that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). USMS has redacted twelve records pursuant to this provision. Bordley Decl. ¶ 12.

In order for particular records to qualify for this exemption, the agency must first demonstrate that the documents were compiled for law enforcement purposes. *See Rural Hous. Alliance v. U.S. Dep't of Agric.*, 498 F.2d 73, 80 (D.C. Cir. 1974). The Bordley declaration states that all of the information at issue was compiled for the law enforcement purposes relating to USMS's oversight of prisoners, including plaintiff. Bordley Decl. ¶ 9. Plaintiff acknowledges that the law enforcement purpose threshold requirement exists, and he does not dispute that it has been satisfied here. Pl.'s 2d Resp. at 13–14.

This Circuit has consistently held that where a FOIA request for law enforcement records invokes the privacy interests of any third party mentioned in those records (including investigators, suspects, witnesses, and informants), the exemption applies unless there is an overriding public interest in disclosure. *See Schrecker v. DOJ*, 349 F.3d 657, 661 (D.C. Cir. 2003); *Lewis v. DOJ*, 609 F. Supp. 2d 80, 84 (D.D.C. 2009). So the first step in any Exemption (b)(7)(C) analysis is to determine whether any privacy interest exists; then the court balances the privacy interest against the public interest in disclosure. *See, e.g., People for the Ethical Treatment of Animals v. Nat'l Insts. of Health Dep't of Health & Human Servs.*, 853 F. Supp. 2d 146, 154–59 (D.D.C. 2012).

According to the Bordley declaration and the *Vaughn* index he provided, the information that USMS withheld under Exemption (b)(7)(C) is identifying information – including names, addresses, and identification and prison registration numbers – of law enforcement officers, third-party individuals, USMS employees, government employees, and other prisoners. Bordley Decl. ¶ 12.

"As a general rule, third-party identifying information contained in [law enforcement] records is 'categorically exempt' from disclosure." *Lazaridis v. U.S. Dep't of State*, -- F. Supp. 2d --, Civ. A. No. 10-1280(RMC), 2013 WL 1226607, at *12 (D.D.C. Mar. 27, 2013). "Under Exemption (b)(7)(C), an agency may "redact the names, addresses, or other identifiers of individuals mentioned in investigatory files in order to protect the privacy of those persons." *Nation Magazine*, 71 F.3d at 896; *see also Dunkelberger v. DOJ*, 906 F.2d 779, 781 (D.C. Cir. 1990), quoting *Stern v. FBI*, 737 F.2d 84, 91–92 (D.C. Cir. 1984) ("Exemption 7(C) takes particular note of the 'strong interest' of individuals, whether they be suspects, witnesses, or investigators, 'in not being associated unwarrantedly with alleged criminal activity.'").

Plaintiff disputes USMS's assertion that there is some privacy interest in the information he requests because at least some of the named individuals, he argues, were "the subject of a great number of television and newspaper news reports." Pl's 2d Resp. at 23. While there is some support for the notion that a private citizen waives her privacy interest in information when she voluntarily brings that information into the public domain, *see Nation Magazine,* 71 F.3d at 896, plaintiff merely asserts – without substantiating – the existence of such reports and thus has not met his burden of showing that has occurred here. To establish that a privacy interest has been waived, the plaintiff bears the burden of showing that the information: "(1) is 'as specific as the information previously released'; (2) 'match[es] the information previously disclosed'; and

(3) was 'made public through an official and documented disclosure.'" *McRae v. DOJ*, 869 F. Supp. 2d 151, 165 (D.D.C. 2012) (alteration in original), quoting *Fitzgibbon v. CIA*, 911 F.2d 755, 765 (D.C. Cir. 1990). Plaintiff has not met that burden. Plaintiff has presented no evidence that any individual publicly disclosed his or her role in his criminal prosecution, much less that the information publicly disclosed is the same as the information being withheld. *See Span v. DOJ*, 696 F. Supp. 2d 113, 122 (D.D.C. 2010), quoting *Cottone v. Reno*, 193 F.3d 550, 554 (D.C. Cir. 1999) ("Because Span has not identified any specific information or . . . 'the *exact* portions' of a specific document that is in fact 'preserved in a permanent public domain,' his public domain challenge fails.") (emphasis in original). Accordingly, the Court finds a substantial privacy interest in the withheld identifying information.

Where – as here – a legitimate privacy interest exists, the requester must next "(1) show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake, and (2) show the information is likely to advance that interest." *Boyd v. Criminal Div. of the U.S. DOJ*, 475 F.3d 381, 387 (D.C. Cir. 2007), quoting *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004) (internal quotation marks omitted). The Supreme Court has determined that the only relevant public interest for purposes of Exemption (b)(7)(C) is "the citizens' right to be informed about what their government is up to." *DOJ v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 773 (1989) (internal quotation marks and citations omitted). In determining whether to disclose a document, a court must weigh "the nature of the requested document and its relationship to 'the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny.'" *Id.* at 772, quoting *Dep't of Air Force v. Rose*, 425 U.S. 352, 372 (1976). "That purpose, however, is not fostered by disclosure of information about private citizens that is accumulated in various

governmental files but that reveals little or nothing about an agency's own conduct." *Id.* at 773

(internal quotation marks and citations omitted). Moreover, courts in this Circuit have

consistently held that where an individual seeks law enforcement records that implicate the

privacy interests of a third party, the requester bears the burden of asserting the public interest at

play. *See, e.g.*, *Boyd*, 475 F.3d at 387; *Lewis*, 609 F. Supp. 2d at 84; *Fischer v. DOJ*, 596 F.

Supp. 2d 34, 47 (D.D.C. 2009). Law enforcement records may be withheld under Exemption

(b)(7)(C) "if the privacy interest at stake outweighs the public's interest in disclosure." *Nation*

*Magazine*, 71 F.3d at 893 (citations omitted).

Defendants argue that plaintiff presents no legitimate public interest favoring disclosure

of the personal identifying information withheld under Exemption (b)(7)(C). Defs.' 2d Mem. at

14–15. Rather, according to defendants, disclosure would allow the individuals whose names

and other personal information were redacted, to be subjected to unwarranted attention,

harassment, and other threats. *Id.* at 15. The Court agrees.

For his part, plaintiff maintains that defendants' balancing test is a "perfunctory sham"

used to withhold documents. Pl.'s 2d Resp. at 14. He also alleges that the documents will reveal

exculpatory and/or mitigating statements that will reveal his innocence in regards to the criminal

offense for which he was convicted, as well as his role in securing the criminal conviction of

another individual for murder. *See id.* at 15, 22. But he fails to explain how identifying

information of third parties – the only withheld information – could be exculpatory and/or

mitigating. Moreover, the interest in revealing exculpatory information about one individual's

criminal case is not the type of public interest protected by FOIA because it would "reveal[] little

or nothing about an agency's own conduct." *Reporters Comm.*, 489 U.S. at 773. "That the

[agency]'s denial of his FOIA requests may hinder his efforts to challenge his conviction or

sentence . . . is irrelevant." *Pugh v. FBI*, 793 F. Supp. 2d 226, 233 (D.D.C. 2011), citing *Oguaju v. United States*, 378 F.3d 1115, 1116–17 (D.C. Cir. 2004).

Plaintiff also maintains that "the naming of law enforcement Agents who conducted the specific wit[n]ess interviews of" the murderer in whose conviction plaintiff claims to have played a role and of the agents "who took into th[ei]r possession the audio-taps and investigative case[] notes and the explosive investigation reports" are matters of significant public interest because they would "cast the light of day on how citizenry's Government operates." Pl.'s 2d Resp. at 27.[12] This description however fails to state <u>how</u> the disclosure of such identifying information would shed any light on the way that the government operates. Because plaintiff has not identified any public interest that would overcome the privacy interest protected by Exemption (b)(7)(C), the Court finds that USMS's withholdings were proper. The Court also notes that the limited scope of the redactions made by USMS under Exemption (b)(7)(C) – which includes only the names, addresses, and other identifying information of third parties, Bordley Decl. ¶ 12 – satisfies the Court that USMS has met its burden to release all reasonably segregable material.

### 3. *ATF*

Since the Court has already found that plaintiff constructively exhausted his administrative remedies with respect to the documents referred to ATF from EOUSA, it will

---

12      Plaintiff also requests documents because he claims that they are relevant to his criminal case. *See, e.g.,* Pl.'s 2d Resp. at 22. However, a requester's interest in his own case is insufficient to establish a relevant public interest. "[T]he only public interest relevant for purposes of Exemption 7(C) is one that focuses on 'the citizens' right to be informed about what their government is up to.'" *Davis v. DOJ*, 968 F.2d 1276, 1282 (D.C. Circ. 1992) (internal quotations marks and citations omitted)

proceed to address whether ATF's withholdings of portions of those records under Exemption (b)(7)(C) were justified. It finds that they were.

The information that ATF has withheld under Exemption (b)(7)(C) is the names and identifying information of federal law enforcement agents, federal law enforcement employees, and third-party individuals. 1st Boucher Decl. ¶ 7. As the Court already explained in detail in its discussion of USMS's reliance on Exemption (b)(7)(C), an agency may "redact the names, addresses, or other identifiers of individuals mentioned in investigatory files in order to protect the privacy of those persons." *Nation Magazine*, 71 F.3d at 896. Thus, ATF identified an adequate privacy interest in the information it has withheld.

Plaintiff advances the same alleged public interests in disclosing the information ATF has withheld under Exemption (b)(7)(C) that he advanced with respect to the information USMS has withheld. Pl.'s 2d Resp. at 14–15. The Court finds them unavailing for the reasons already discussed. Accordingly, the Court finds that defendants properly relied upon Exemption (b)(7)(C) to withhold the disputed information. *Boyd*, 475 F.3d at 387. In addition, the limited scope of the redactions made by ATF under Exemption (b)(7)(C) – which includes only the names and other identifying information of third parties, 1st Boucher Decl. ¶ 7 – satisfies the Court that ATF has met its burden to release all reasonably segregable material.

4.     *EOUSA*

In withholding documents and information responsive to plaintiff's FOIA request, EOUSA relies on Exemptions (b)(3), (b)(5), (b)(6), and (b)(7)(C).  Luczynski Decl. ¶ 6.  Plaintiff challenges each of these exemptions except Exemption (b)(3).  Pl.'s 2d Resp. at 13–15, 17–21.  The Court will address each of these exemptions in turn.

a.     <u>EOUSA properly withheld records pursuant to FOIA Exemption (b)(3)</u>

EOUSA relies on Exemption (b)(3) to withhold conflict of interest forms.  Luczynski Decl. ¶¶ 13–14.[13]  FOIA Exemption (b)(3) authorizes the government to withhold information that is:

> [S]pecifically exempted from disclosure by statute . . . if that statute
>
> (A)(i) requires that the matters be withheld from the public in such a manner as to leave no discretion on the issue; or
>
> (ii) establishes particular criteria for withholding or refers to particular types of matters to be withheld; and
>
> (B) if enacted after the date of enactment of the OPEN FOIA Act of 2009 [enacted Oct. 28, 2009], specifically cited to this paragraph.

5 U.S.C. § 552(b)(3).  Defendants point to 5 U.S.C. app § 107(a)(2) as the statute that bars the disclosure of conflict of interest forms under Exemption (b)(3).  Luczynski Decl. ¶¶ 13–14.  Plaintiff does not challenge EOUSA's reliance on Exemption (b)(3) to withhold this form, so this

---

[13]     Although the EOUSA does not explain in any detail who the conflict of interest forms pertain to or what they contain, the Court can infer by EOUSA's reference to 5 U.S.C. App. § 107(a) that these forms are certifications that Assistant United States Attorneys file for each case to which he or she is assigned.  *See Concepcion v. FBI*, 606 F. Supp. 2d 14, 33–34 (D.D.C. 2009) (characterizing conflict of interest certifications withheld under Exemption (b)(3) as forms that each Assistant United States Attorney must complete for each case to which he is assigned), citing *Glascoe v. DOJ*, Civ. A. No. 04-0486(RJL), 2005 WL 1139269, at *2 (D.D.C. May 15, 2005); *see also Glascoe*, 2005 WL 1139269, at *1 n.2 (characterizing conflict of interest certifications withheld under Exemption (b)(3) as "an approved alternative to the Office of Government Ethics standard form 450").

Court may properly treat the issue as conceded. *McMillan v. WMATA*, 898 F. Supp. 2d 64, 69 (D.D.C. 2012), citing *Howard v. Locke*, 729 F. Supp. 2d 85, 87 (D.D.C. 2010).[14]

        b.   EOUSA properly withheld records pursuant to FOIA Exemption (b)(5)

The next exemption EOUSA relies upon is Exemption (b)(5). Luczynski Decl. ¶¶ 16–17. As explained above with regards to the records that CRM has withheld under this exemption, Exemption (b)(5) allows agencies to withhold from production inter- or intra-agency documents that would not be available in litigation. 5 U.S.C. § 552(b)(5). As with CRM's invocation of this exemption, there is no dispute that the EOUSA is a government agency; therefore, the relevant question is whether the documents withheld "fall within the ambit of a privilege against discovery under judicial standards that would govern litigation against the agency that holds it." *Klamath*, 532 U.S. at 8. Like CRM, EOUSA identifies two such privileges: (1) the attorney work product doctrine and (2) the deliberative process privilege. Luczynski Decl. ¶ 17. Because the Court finds that the attorney work product doctrine covers EOUSA's withholdings, the Court need not address the deliberative process privilege.

As explained above, the attorney work product doctrine permits the withholding of material that is "prepared in anticipation of litigation or for trial. . . ." *Judicial Watch*, 432 F.3d at 369, quoting Fed. R. Civ. P. 26 (b)(3). EOUSA withheld the following categories of documents pursuant to Exemption (b)(5)'s attorney work product privilege prong:

- A "[p]rintout of an e-mail exchange between attorneys for the government discussing various issues and how they relate to prosecution of plaintiff," (Document No. 1);

---

14    The Court notes that case law in this Circuit supports defendants' argument that EOUSA's conflict of interest forms are exempt from FOIA disclosure requirements under Exemption (b)(3). *See Concepcion*, 606 F. Supp. 2d at 33–34 (finding EOUSA conflict of interest forms appropriately withheld under Exemption (b)(3)); *Lopez v. Exec. Office for U.S. Attorneys*, 598 F. Supp. 2d 83, 87 (D.D.C. 2009) (granting summary judgment for defendant who relied on Exemption (b)(3) to withhold conflict of interest forms).

- A "printout of e-mails between attorneys discussing legal positions in Plaintiff's case as well as other typed notes prepared by attorneys involved in the case," (Document No. 2);

- "Drafts of court filed briefs and other records in the case of <u>US v. Barouch</u>," (Document No. 3);

- "Attorney work product documents made up of e-mails containing thoughts, strategies, and other relevant information used to prosecute the plaintiff," (Document No. 6); and

- "Various investigatory material including communications, police reports, and e-mails from experts in the field," limited to certain "identifying information such as names, badge numbers, phone numbers, and in some instances occupations," (Document No. 10).

*Vaughn* Index, Attach. to Luczynski Decl. Based on the descriptions of these documents, the Court is satisfied that each of them can fairly be said to have been prepared or obtained because of the prospect of a criminal case being brought against plaintiff. *See Lutheran Soc. Servs.*, 186 F.3d at 968.

Plaintiff argues that the documents should be produced because the only material he seeks is factual in nature. But even "factual material is itself privileged when it appears within documents that are attorney work product." *Judicial Watch*, 432 F.3d at 371.

Plaintiff also suggests – although he does not expressly argue – that the attorney work product doctrine does not protect documents when a party demonstrates a "substantial need." Pl.'s 2d Resp. at 19. But while that limitation may apply in the context of civil litigation discovery, it does not apply in the context of FOIA. *Judicial Watch, Inc. v. U.S. Dept. of Homeland Sec.*, 841 F. Supp. 2d 142, 156 n. 8 (D.D.C. 2012), citing *Williams & Connolly v. Secs. & Exch. Comm'n*, 662 F.3d 1240, 1243 (D.C. Cir. 2011). Because the government has adequately demonstrated that these documents fall under the attorney work product privilege, the Court finds that they were properly withheld under Exemption (b)(5). *See Judicial Watch*, 432

F.3d at 371 ("If a document is fully protected as work product, then segregability is not required.").

> ### c. EOUSA properly withheld records pursuant to FOIA Exemption (b)(7)(C), but did not properly release segregable material

Next, EOUSA withheld certain categories of documents pursuant to Exemption (b)(7)(C).[15] Luczynski Decl. ¶¶ 23–24. EOUSA has invoked Exemption (b)(7)(C) to withhold the following documents in full[16]:

- A "[f]acsimile regarding a Bench Warrant relating to the plaintiff," (Document No. 4);

- A "[l]etter from probation officer addressing issues relating to the Victim Witness," (Document No. 7);

- A "[d]ocument titled 'Search Warrant Application and Affidavit,'" (Document No. 8); and

- A "[d]raft of a 'Criminal Complaint,'" which "contains sensitive information provided by witnesses as well as information identifying those witnesses," (Document No. 9).

*Vaughn* Index, Attach. to Luczynski Decl.

In each instance, "Exemption (b)(7)(C) [was] asserted to protect the names and other identifying information of third parties, witnesses, and law enforcement personnel who provided

---

15     Every document withheld under Exemption (b)(6) was also withheld under Exemption (b)(7)(C). *See Vaughn* Index, Attach. To Luczynski Decl. FOIA Exemption (B)(7)(C) exempts documents compiled for law enforcement that "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 USC § 552(b)(7)(C). Because this is a lower standard than Exemption 6, which requires a "*clearly* unwarranted" invasion of privacy, *id.* § 552(b)(6) (emphasis added), the Court will address only Exemption (b)(7)(C). *See Reporters Comm.*, 489 U.S. at 756.

16     This list does not include documents withheld under Exemption (b)(7)(C) that the Court has already permitted to be withheld under some other FOIA exemption.

information to the investigation team on the grounds that disclosure could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.*

The information withheld pursuant to Exemption (b)(7)(C) by EOUSA was of the same nature as the information withheld under the same exemption by USMS and ATF, *compare* Bordley Decl. ¶ 12 *with Vaughn* Index, Attach. to Luczynski Decl., and plaintiff made the same arguments to challenge all of them. The Court finds, based on the same legal analysis that it used to assess the application of Exemption (b)(7)(C) by USMS and ATF, that EOUSA properly withheld the identifying information. *See Boyd* , 475 F.3d at 387; *Lazaridis*, 2013 WL 1226607, at *12.

However, while EOUSA appropriately withheld information pursuant to Exemption (b)(7)(C), the justifications provided in the *Vaughn* index are insufficient to explain why each of the previously discussed documents were withheld in full. *Vaughn* Index, Attach to Luczynski Decl. "[I]t has long been the rule in this Circuit that non-exempt portions of a document must be disclosed *unless* they are inextricably intertwined with exempt portions." *Wilderness Soc'y*, 344 F. Supp. 2d at 18 (emphasis in original), quoting *Mead Data Cent.,* 566 F.2d at 260. With respect to each of these documents, the *Vaughn* index states that "[n]o page was determined segregable after a review for segregability." *Vaughn* Index, Attach. to Luczynski Decl. However, this statement does not provide enough information for the Court to determine whether the document contains disclosable portions that are not "inextricably intertwined" with the identifying information that is properly withheld under Exemption (b)(7)(C). *Wilderness Soc'y*, 344 F. Supp. 2d at 18.

Accordingly, on July 25, 2013, the Court ordered defendants to deliver those four documents to chambers for *in camera* inspection in order to assist the Court in making a

responsible *de novo* determination. Minute Order (July 25, 2013). The Court has now reviewed those documents and finds that all four of them contain portions that are not inextricably intertwined with identifying information about third parties, witnesses, and law enforcement personnel. On that basis, the Court will order EOUSA to disclose the following portions of those documents, which the Court has determined are segregable:[17]

- From EOUSA Document 4: Page two of the record, except the names and fax numbers that appear in the header on that page.

- From EOUSA Document 7: All nine pages of the record, except: (1) the name and address of the addressee that appears on pages one and six of the record; (2) the name of the U.S. Probation Officer that appears on pages two and seven of the record; and (3) the name and title of the individual copied on the correspondence that appears on pages two and seven of the record.

- From EOUSA Document 8: All eleven pages of the record, except: (1) the name of the Special Agent, which appears throughout the record; (2) the initials that appear throughout the record to identify a particular individual; (3) paragraph twelve on page four of the record; (4) the second, third, and fourth sentences of paragraph thirteen on page five of the record; and (5) paragraph sixteen on page five of the record; (6) paragraph two on page nine of the record; (7) the second, third, and fourth sentences of paragraph three on pages nine to ten of the record; (8) paragraph six on page ten of the record; and (9) the name of the individual, identified as an employee of the Texas Department of Public Safety Crime Lab, that appears in paragraph twelve on page eleven of the record.

- From EOUSA Document 9: All eight pages of the record, except: (1) the name of the Special Agent, which appears throughout the record; (2) the initials that appear throughout the record to identify a particular individual; (3) paragraph one on page one of the record; (4) the second, third, and fourth sentences of paragraph two on page two of the record; (5) paragraph five on page two of the record; (6) paragraph

---

17    The Court notes that although Document Number 9 is described in EOUSA's *Vaughn* Index as a draft of a criminal complaint, defendants have not asserted Exemption (b)(5) as a basis for the withholding. In addition, although defendants wrote in the "justification" column of the *Vaughn* Index for document number 4 that, "[d]isclosure of any portion of the document would disclose attorney work product and the deliberate process concerning a particular case, thus the document is not segregable," they did not assert Exemption (b)(5) as a basis for the withholding. Even so, the Court would find based on its *in camera* review of the document, that it is not covered by either the attorney work product privilege or the deliberative process privilege.

one on pages four to five of the record; (7) the first three sentences of paragraph two on page five of the record; (8) the three words following the phrase "photographs of Improvised Explosive Weapon left" that appear in paragraph five on page five of the record; (9) all names that appear in paragraph five on pages five to six of the record; (10) paragraphs six through ten that appear on pages six to seven of the record.

### 5. *The Court need not examine any other FOIA exemptions*

Plaintiff also identifies a handful of FOIA exemptions which he contends are inadequate to justify withholding responsive documents from production, but which the agencies never invoked.[18] Pl.'s 2d Resp. 15–17, 20–21. Because defendants have not relied upon these exemptions to withhold any material, the Court need not examine plaintiff's arguments concerning them.

## III. The Privacy Act

The Privacy Act provides:

> Each agency that maintains a system of records shall . . . upon request by any individual to gain access to his record or to any information pertaining to him which is contained in the system, permit him . . . to review the record and have a copy made of all or any portion thereof in a form comprehensible to him . . . .

5 U.S.C. § 552a(d)(1). Thus, for the disclosure provision to apply, the material at issue must be a "record" that is, in turn, contained in a "system of records." *Fisher v. Nat'l Inst. of Health*, 934 F. Supp. 464, 468 (D.D.C. 1996).

When a plaintiff challenges an agency's withholding of documents under the Privacy Act, the court determines *de novo* whether the withholding was proper, and the burden is on the agency to sustain its action. 5 U.S.C. § 552a(g)(3)(A); *Doe v. United States*, 821 F.2d 694, 697–98 (D.C. Cir. 1987) (en banc) (finding that in this context, de novo means "a fresh, independent determination of 'the matter' at stake," and the court need not give "deference . . . [to] the agency's conclusion"); *see also Skinner v. DOJ*, 584 F.3d 1093, 1096 (D.C. Cir. 2009). "[T]he

---

18    These exemptions are (b)(4), (b)(7)(D), and (b)(7)(F). Pl.'s 2d Resp. 15–17, 20–21.

[Privacy] Act 'safeguards the public from unwarranted collection, maintenance, use and dissemination of personal information contained in agency records . . . by allowing an individual to participate in ensuring that his records are accurate and properly used." *McCready v. Nicholson*, 465 F.3d 1, 7–8 (D.C. Cir. 2006), quoting *Bartel v. Fed. Aviation Admin.*, 725 F.2d 1403, 1407 (D.C. Cir. 1984).

Where a request for documents is made under both FOIA and the Privacy Act, the responding agency "must demonstrate that the documents fall within some exemption under *each* Act." *Martin*, 819 F.2d at 1184 (emphasis in original). "If a FOIA exemption covers the documents, but a Privacy Act exemption does not, the documents must be released under the Privacy Act; if a Privacy Act exemption but not a FOIA exemption applies, the documents must be released under FOIA."[19] *Id.*

## A.    The Court does not have jurisdiction to consider plaintiff's challenges to the withholdings by CRM, ATF, or BOP under the Privacy Act because plaintiff has not exhausted his administrative remedies

Plaintiff's claims challenging CRM's, ATF's, and BOP's withholdings under the Privacy Act are barred because plaintiff failed to exhaust his administrative remedies with respect to those withholdings. As with FOIA, once a Privacy Act request has been processed, a plaintiff is required to exhaust all administrative remedies before bringing an action to compel disclosure of documents. *See Haase v. Sessions*, 893 F.2d 370, 373 (D.C. Cir. 1990) (finding a cause of action under the Privacy Act to be subject to administrative exhaustion requirement). Failure to exhaust one's remedies bars the lawsuit. *See Mulhern v. Gates*, 525 F. Supp. 2d 174, 187 (D.D.C. 2007) (dismissing Privacy Act suit brought without exhaustion of administrative remedies for lack of

---

19    It is worth noting that plaintiff has not challenged any of defendants' withholdings under the Privacy Act, and so the Court may properly treat those withholdings as conceded. *See McMillan v. WMATA*, 898 F. Supp. 2d 64, 69 (D.D.C. 2012), citing *Howard v. Locke*, 729 F. Supp. 2d 85, 87 (D.D.C. 2010).

subject matter jurisdiction). Indeed, failure to exhaust administrative remedies under the Privacy Act is a jurisdictional deficiency because exhaustion is required by statute. *See* 5. U.S.C. § 552a(d)(1)–(3); 5 U.S.C. § 552a(g)(1)(B); *Mulhern*, 525 F. Supp. 2d at 183 ("Premature Privacy Act suits [for improperly withholding documents] are dismissed for lack of subject matter jurisdiction."); *Kursar v. Transp. Sec. Admin.*, 581 F. Supp. 2d 7, 18 (D.D.C. 2008) (same). "A person seeking judicial review of an agency's handling of his or her Privacy Act request must actually exhaust the available administrative remedies." *Makuch v. FBI*, No. Civ.A 99-1094 RMU, 2000 WL 915640, at *4 (D.D.C. Jan. 5, 2000).

With respect to CRM, there is no dispute that plaintiff exhausted the available administrative remedies for challenging its initial determination on his Privacy Act request by filing a timely appeal with OIP. Cunningham Decl. ¶ 13; *see also* Ex. 6 to Cunningham Decl. But there is no indication that plaintiff appealed CRM's subsequent determination to withhold the Richter Memorandum – the document referred to CRM by EOUSA after plaintiff filed the complaint in this action. *See* Ex. 11 to Cunningham Decl. Even though CRM did not provide a justification under the Privacy Act in its April 18, 2012 letter informing plaintiff that it was withholding the Richter memorandum, plaintiff must raise that deficiency in a timely appeal to OIP before this Court obtains jurisdiction to hear it.[20] And because exhaustion under the Privacy Act is jurisdictional, the Court cannot find that plaintiff constructively exhausted his administrative remedies. In addition, there is no evidence that plaintiff exhausted his administrative remedies with respect to the Richter memorandum when it was being withheld by EOUSA because, as will be discussed below, plaintiff did not administratively challenge EOUSA's failure to timely respond to his request. Accordingly, this Court does not have

---

[20] The letter did inform plaintiff of his right to an administrative appeal and of the process for filing an appeal.

jurisdiction over his challenge to CRM's withholding of the Richter memorandum under the Privacy Act. *Makuch*, 2000 WL 915640, at *4.

With respect to both BOP and ATF, plaintiff is barred from challenging the agencies' initial determinations on his Privacy Act request because he did not file appeals of either of those determinations with OIP. Attach. 9 to Mack Decl. (BOP); 1st Boucher Decl. ¶ 8 (ATF).

Both agencies also obtained documents from EOUSA after the initiation of this action. BOP never contacted plaintiff regarding these documents. *See generally* Mack Decl. (making no reference to documents referred to BOP by EOUSA). ATF informed plaintiff that it had received documents from EOUSA and that it was releasing them to plaintiff with redactions. Ex. E to 1st Boucher Decl. But, while it justified the redactions under FOIA, it did not justify them under the Privacy Act. *Id.* Even though all of these events occurred after plaintiff had already filed the complaint in this action, he is jurisdictionally barred from challenging them here because he failed to first file an appeal with OIP. *Mulhern*, 525 F. Supp. 2d at 183.

**B.      Plaintiff's Privacy Act claims with respect to EOUSA are barred**

EOUSA appears to be willing to concede that plaintiff had constructively exhausted his administrative remedies at the time he filed suit. Defs.' 2d Mem. at 17 n.8. But, "[t]he Privacy Act contains no equivalent to FOIA's constructive-exhaustion provision." *Makuch*, 2000 WL 915640, at *4. Despite defendant's concession, "[a] claim that the court lacks jurisdiction under Article III of the Constitution may not be waived, . . . and the court is obligated to address it *sua sponte*." *Doe ex rel. Fein v. District of Columbia*, 93 F.3d 861, 871 (D.C. Cir. 1996), citing *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986). Accordingly, the Court must find that plaintiff failed to exhaust his administrative remedies with respect to his request to

EOUSA, and the Court's consideration of EOUSA's justification for its withholdings under the Privacy Act on the merits is therefore barred for lack of subject matter jurisdiction.

### C. Plaintiff has not established that USMS inappropriately declined to produce documents pursuant to the Privacy Act

Plaintiff did, however, appeal USMS's withholdings under the Privacy Act, so this Court's review of that agency's action is not jurisdictionally barred. USMS asserts that all of the records at issue here fall under an exemption to disclosure under the Privacy Act, codified at 5 U.S.C. § 552a(j)(2) ("Exemption j(2)"). Defs.' 2d Mem. at 13 n.5. Exemption j(2) applies if: (1) the records are stored in a system of records that has been designated by the agency to be exempt from the Privacy Act's disclosure requirements, and (2) the system of records is "maintained by an agency or component thereof which performs as its principal function any activity pertaining to the enforcement of criminal laws" and consists of "information compiled for the purpose of a criminal investigation." 5 U.S.C. § 552a(j)(2) (2012); *see also* Defs.' 2d Mem. at 13 n.5.

Plaintiff has not opposed defendants' assertion of Exemption (j)(2) over any of the material at issue in this case, so the Court may properly treat defendants' assertion as conceded. *See McMillan*, 898 F. Supp. 2d at 69, citing *Howard*, 729 F. Supp. 2d at 87 ("It is well understood in this Circuit that when a plaintiff files an opposition to a motion . . . addressing only certain arguments raised by the defendant, a court may treat those arguments that the plaintiff failed to address as conceded.").[21]

---

[21] In addition, the Court is satisfied that defendants have met their burden to show that Exemption j(2) applies to any responsive records covered by the Privacy Act. The Bordley Declaration states that the system of records to which these documents belong assists the USMS in effectuating its statutory law enforcement responsibilities. Bordley Decl. ¶ 5. In addition, as the Bordley Declaration notes, federal regulation exempts the relevant systems because 28 C.F.R. §§ 16.101(a) and (q) identify JUSTICE/USM-007 and JUSTICE/USM-005 as being exempt from Privacy Act disclosure provisions. *Id.*

### D. Plaintiff's Privacy Act claims with respect to Treasury are barred

Because, as discussed above, plaintiff has not established that he submitted a request to Treasury, the Court need not address Treasury's production obligations under the Privacy Act.

### IV. Plaintiff's Remaining Arguments

Finally, plaintiff sets forth a number of other arguments concerning the adequacy of the agencies' searches and productions. None is persuasive.

First plaintiff argues that the government is operating in bad faith and inappropriately withholding exculpatory evidence for his criminal case. Pl.'s 2d Resp. at 26–27. With respect to the adequacy of the search, and as the Court has already explained, affidavits attesting to a reasonable search "are afforded a presumption of good faith," *Defenders of Wildlife*, 314 F. Supp. 2d at 8, and "can be rebutted only 'with evidence that the agency's search was not made in good faith.'" *Id.*, quoting *Trans Union LLC*, 141 F. Supp. 2d at 69. Plaintiff has come forth with no <u>evidence</u> of bad faith. Instead, he offers merely conclusory assertions. *See* Pl.'s 2d Resp. at 26–27. Accordingly, plaintiff's unsupported argument is unsuccessful.

Next, plaintiff argues that the *Vaughn* index produced in this case is "simply smoke and mirrors" and that defendants should be ordered to produce an adequate *Vaughn* index.[22] *Id.* at 27–28. Production of a *Vaughn* index is just one way that an agency can explain its response to a FOIA request – albeit a common one. In order for a court to pass on the agency's action, the agency must submit a "Vaughn index and/or accompanying affidavits or declarations" specifically showing why documents were redacted or withheld in full. *Defenders of Wildlife v. U.S. Border Patrol*, 623 F. Supp. 2d 83, 88 (D.D.C. 2009). The *Vaughn* indices and accompanying affidavits in this case are sufficient: Both EOUSA and USMS produced *Vaughn*

---

22      As discussed, defendants produced two *Vaughn* indices – one for EOUSA and one for USMS.

indices that set forth with particularity the documents withheld and the underlying rationales as demonstrated by the Court's ability to rely on them in assessing the government's justifications for its withholdings. *See* Bordley Decl. ¶ 12; *Vaughn* Index, Attach. to Luczynski Decl. Neither BOP nor ATF produced *Vaughn* indices, but they both produced detailed affidavits. Moreover, the Court need not rely on detailed descriptions of those agencies' withholdings because plaintiff has failed to exhaust his administrative remedies with respect to their determinations. *See* 1st Boucher Decl.; Mack Decl.

Finally, there is no need for a *Vaughn* index for the remaining two agencies: Treasury and CRM. Treasury need not produce a *Vaughn* index because it did not receive any request from plaintiff, and the Court will grant summary judgment on that basis. CRM submitted a declaration that described with particularity the sole responsive document that its search uncovered, the material that was withheld from it, and the basis for its withholdings. *See* Cunningham Decl.; Gilmore Decl. The agencies, therefore, need not provide additional *Vaughn* indices.

Plaintiff argues that this Court should undertake an *in camera* inspection of the withheld documents. Pl.'s 2d Resp. at 29. "Congress left the matter of In camera inspection to the discretion of the district court." *Ray v. Turner*, 587 F.2d 1187, 1195 (D.C. Cir. 1978). And the criterion that courts use to determine whether to exercise that discretion is "[w]hether the district judge believes that In camera inspection is needed in order to make a responsible de novo determination on the claims of exemption." *Id.* At the same time, in camera review is not required in every case and it "is not a substitute for the government's obligation to justify its withholding in publicly available and debatable documents." *PHE, Inc. v. DOJ*, 983 F.2d 248, 253 (D.C. Cir. 1993) (internal quotation marks and citations omitted). There is no reason for the

Court to conduct an in camera inspection of the documents about which the agencies made disclosure decisions that plaintiff did not appeal to OIP, because the Court's review of those agency determinations is barred. And the Court has already found that the *Vaughn* indices submitted by the parties provide sufficient detail for the Court to assess the agencies' claims of exemption on the remaining documents, except for the four EOUSA documents that the Court has reviewed.

Finally, plaintiff argues that this Court's powers in equity allow it to exercise jurisdiction for purposes of deciding the matter. Pl.'s 2d Resp. at 30–32. But he provides no authority for the proposition that a federal court can unilaterally expand its own jurisdiction.

**CONCLUSION**

For the reasons set forth above, this Court will grant defendants' first partial motion for summary judgment [Dkt. # 15], and will grant in part and deny in part defendants' second partial motion for summary judgment [Dkt. # 22]. The Court will direct defendant EOUSA to produce portions of four withheld documents, consistent with this Memorandum Opinion. The Court will also remand to BOP to review the documents that it received from EOUSA after plaintiff had already initiated this action and to either disclose those documents to plaintiff or justify any withholdings under FOIA. A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: August 23, 2013